# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL LEVIN, ) | |
| ) | |
| Plaintiff, ) | Case No. 10 C 01606 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| NC12, INC., a Nevada Corporation, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Levin filed this suit against NC12, Inc. seeking damages that resulted from NC12's alleged breach of contract.[1] NC12 moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party or, alternatively, under Rule 12(b)(3) for improper venue. R. 27. For the following reasons, NC12's motion is granted and this case is dismissed for improper venue.

## I.

In considering the current motion to dismiss for failure to join a necessary party or, alternatively, for improper venue, the Court accepts the plaintiff's allegations in the complaint as true. *Faulkenberg v. CB Tax Franchise*, 637 F.3d 801, 804 (7th Cir. 2011); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). Plaintiff Michael Levin, an Illinois citizen, is a consultant in the energy industry. R. 1 (Compl.) ¶¶ 3, 9-10. Defendant NC12 is a corporation formed under the laws of the State of

---

[1]This Court has jurisdiction under 28 U.S.C. §1332(a)(1) because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

Nevada, with its principal place of business in Houston, Texas. *Id.* ¶ 4. In October 2008, Levin was employed as a consultant for an energy company called Power Holdings of Illinois. *Id.* ¶ 10. When Texas Syngas, Inc. (TSI), another energy company, sought Levin's consulting services, Levin decided to leave Power Holdings and start working for TSI. *Id.* ¶¶ 9-12.

In January 2009, Levin and TSI executed a written consulting agreement. *Id.* ¶ 12. According to the terms of the agreement, in exchange for Levin's services, TSI would pay him $15,000 per month and two-percent of TSI's net profits generated from the sale of synthetic natural gas (SNG) in Illinois. *Id.* ¶ 14(a), (d). TSI also agreed to assist Levin in collecting $75,000 that Power Holdings owed Levin in past-due consulting fees. *Id.* ¶ 14(c). If the money was not collected within one year, TSI agreed to pay Levin $75,000 and Levin would assign any and all interest in his claim to this money to TSI. R. 4 (Consulting Agreement, attached as Exh. 1 to Compl.) at 4. Levin would also be responsible for furnishing adequate security to ensure repayment of the $75,000 to TSI in the event it was determined that Levin was not entitled to the money from Power Holdings. *Id.* Finally, TSI agreed to pay Levin a severance payment of $75,000 if their consulting arrangement was terminated for any reason other than for cause. Compl. ¶ 14(b).

The consulting agreement includes a governing law and mediation/arbitration clause, which provides:

> This Agreement shall be governed exclusively by the laws of the State of Texas, disregarding any conflicts of laws rules that might otherwise be applicable. Any

2

> dispute arising out of [Levin's] relationship with TSI shall be resolved first, by non-binding mediation in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association then in effect. If such mediation is not successful, than such dispute shall be settled by final, binding arbitration, to be conducted in Houston, Harris County, Texas by a single arbitrator selected by the parties.

R. 4 at 4. The agreement includes a forum selection clauses that states that "[e]ither party may bring suit under the Texas Arbitration Act, as effective on the date appearing below, in the District Courts of Harris County, Texas to enforce arbitration." *Id.*

Levin and TSI operated under this agreement for several months. Levin performed consulting services for TSI, and TSI made monthly payments of $15,000 to Levin. Compl. ¶¶ 15-16. At various times in 2009, principals at TSI told Levin that the company planned to change its name to NC12, Inc. *Id.* ¶ 18. Between February 2009 and October 2009, some of the checks Levin received were from TSI, while other checks indicated that they were issued by NC12. *Id.* ¶ 17. In November 2009, the payments stopped. *Id.* ¶ 23. Levin complains that he has not received any payments for work done between November 2009 and March 2010. *Id.* ¶¶ 23, 32. Levin also claims he is owed prorated compensation for the month of January 2009, the $75,000 that was never collected from Power Holdings, and two-percent of the net profits generated from the sale of SNG in Illinois. *Id.* ¶¶ 24, 32. Levin alleges that NC12 is liable for these outstanding payments because it succeeded TSI under the consulting agreement and/or ratified the contract by accepting the benefit of Levin's work, making payments to

3

Levin pursuant to the contract, and failing to disclose to Levin that NC12 was not just a name change, but a separate entity altogether. *Id.* ¶ 29.

Levin initially attempted to arbitrate this dispute, as required by the contract's mandatory arbitration clause, but NC12 refused to participate in the arbitration process. *Id.* ¶¶ 25-26. According to the complaint, the president of NC12 responded to Levin's arbitration demand by denying that a contract existed between NC12 and Levin. *Id.* ¶ 27. Levin consequently filed this lawsuit in March 2010. NC12 moved to dismiss Levin's complaint for lack of personal jurisdiction. R. 14. In October 2010, NC12's motion was denied by the district judge previously assigned to the case. R. 26. Approximately three weeks later, NC12 filed the instant motion to dismiss. R. 27.

## II.

NC12 first argues that the case should be dismissed pursuant to Rule 12(b)(7) because Levin failed to join TSI as a defendant. R. 27 ¶¶ 7-11. NC12 claims that TSI, a signatory and party to Levin's consulting contract, has rights under the contract that will be affected by the adjudication of this lawsuit. *Id.* ¶ 9. In response, Levin points out that NC12's president, Michael D. Sydow, submitted a declaration in this case stating that TSI dissolved on June 8, 2009.[2] *See* R. 14-2 ¶ 4. Levin argues that because TSI no longer exists, it does not maintain an interest relating to the subject of this action and does not need to be joined.

---

[2] In "ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence." *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001). Sydow's declaration was attached as an exhibit to NC12's first motion to dismiss for lack of personal jurisdiction. *See* R. 14.

4

"The purpose of Rule 19 is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Askew v. Sheriff of Cook County*, 568 F.3d 632, 634 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). In deciding whether a party must be joined under Rule 19, courts consider: (1) whether complete relief can be accorded without joinder (Rule 19(a)(1)(A)); (2) whether the absent party's ability to protect its interests in the subject matter of the suit will be impaired (Rule 19(a)(1)(B)(i); and (3) whether existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent party is joined (Rule 19(a)(1)(B)(ii)). *Davis*, 268 F.3d at 481 (citing Fed. R. Civ. P. 19(a)(1)).

Here, NC12 argues that TSI must be joined based on the second consideration, namely, Rule 19(a)(1)(B)(i). NC12 claims that TSI possesses certain rights under Levin's consulting contract and allowing this litigation to proceed without TSI may impair or impede TSI's ability protect these rights. R. 27 ¶¶ 7-10. Specifically, NC12 claims that TSI's interests under the contract include confidentiality interests, monetary rights, and property rights. *Id.* ¶ 9(a)-(c). However, NC12 fails to explain how these interests remain pertinent to TSI post-dissolution. For instance, NC12 argues that in the event NC12 is ordered to pay Levin the $75,000 owed pursuant to the Power Holdings debt but is unable to recover from Power Holdings, Levin would be required to pay $75,000 to TSI. *Id.* ¶ 9(b). Yet, it is unclear how TSI, which no longer exists, maintains an interest in this hypothetical right to collect, or, as a practical matter, how TSI would collect this amount.

5

In response, Levin alleges that all of TSI's interests and obligations under the contract passed to NC12 and, thus, NC12 is the correct defendant in this case. Whether Levin is able to enforce the contract against NC12 is an issue that can be decided without joining TSI as a party. As stated in Sydow's declaration, he was the president and director of TSI before it dissolved on June 8, 2009. R. 14-2 ¶ 4. According to Sydow, Zagometa, Inc., a third-party, immediately purchased substantially all of TSI's assets. *Id.* ¶ 6. In turn, NC12 purchased substantially all of the assets of Zagometa on June 8, 2009 and Sydow, as president of NC12, has knowledge regarding this transaction. *Id.* ¶¶ 7-8. The Court notes that TSI has not attempted to intervene in this suit to protect any interest it might have under the consulting agreement, nor has NC12 produced an affidavit from TSI explaining how its interests could be affected by the suit. Given the relationship between TSI and NC12 – and assuming TSI was still an active entity – TSI would be likely be aware of this action. *See Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 502 n.13 (7th Cir. 1980). Courts have reasoned that "an absent party's decision to forego intervention indicates that he does not deem is his own interests substantially threatened by the litigation." *Burger King Corp. v. Am. Nat'l Bank & Trust Co. of Chicago*, 119 F.R.D. 672, 678 (N.D. Ill. 1988); *see also MG Capital LLC v. Sullivan*, 2001 WL 160382, at *8 (N.D. Ill. Dec. 17, 2001). At this juncture, NC12 has failed to satisfy its burden of showing that TSI is a necessary party to this suit. *See Rotec Indus., Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006). Additionally, while NC12 only develops an argument with respect to Rule

6

19(a)(1)(B)(i), the Court also finds that none of the Rule 19(a) considerations require dismissal in this case. Therefore, the Court denies NC12's motion to dismiss for failure to name a necessary party.

### III.

Next, NC12 contends that the suit should be dismissed under Rule 12(b)(3) because the consulting agreement at issue contains a mandatory arbitration clause. Levin opposes dismissal on two grounds. First, he argues that NC12 waived its right to arbitrate by failing to raise the defense earlier in the case. Second, Levin claims that NC12 cannot rely on the contract's arbitration clause without conceding that NC12 is bound by the contract. For the following reasons, the Court rejects both of Levin's arguments and dismisses the case for improper venue.

### A.

Levin argues that NC12 waived its improper venue defense by failing to raise it in its first motion to dismiss, in which NC12 argued that the Court lacked personal jurisdiction over NC12. This argument is unpersuasive for several reasons. First, the Seventh Circuit "has explicitly held that simply moving to dismiss a case does not waive one's right to arbitrate." *Halin v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 562 (7th Cir. 2008); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 727 (7th Cir. 2004) (defendant's filing of Rule 12(b)(6) motion did not constitute waiver). Rather, "[c]ourts must examine the totality of the circumstances and 'determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate.'" *Sharif*, 376 F.3d at 726 (quoting *Ernst &*

7

*Young LLP v. Baker O'Neal Holdings*, 304 F.3d 753, 757 (7th Cir. 2002)). Under the circumstances of this case, NC12 did not waive its right to arbitrate.

In its first motion to dismiss, NC12 argued that the Court lacked personal jurisdiction over it pursuant to Rule 12(b)(2). NC12 was not arguing the merits of the case; rather, the issue was confined to whether NC12 was subject to personal jurisdiction due to its transaction of business in Illinois. Although it would have been preferable for NC12 to invoke its right to arbitrate in the first motion, its failure to do so does not clearly constitute a waiver. One of the main factors to consider when determining waiver is a party's diligence or lack thereof. *See Sharif*, 376 F.3d at 726. Here, NC12 filed the instant motion to dismiss approximately eight months after Levin filed his complaint, and within one month of the Court's denial of NC12's motion to dismiss for lack of personal jurisdiction. Whether this delay constitutes a waiver by NC12 must be evaluated in light of NC12's actions during that time period. For instance, the Seventh Circuit has reasoned that, standing alone, ten months may not be a substantial delay because "[a] party needs time to assess its options . . . and [the court could] envision situations where a party may properly take months before deciding whether to litigate or demand arbitration." *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992). In *St. Mary's*, the Court was largely influenced by the defendant's decision to participate in the litigation by propounding discovery and filing a motion to dismiss or, alternatively, for summary judgment. *Id.* at 589. In contrast, the only thing NC12 has done is file a motion to

dismiss under Rule 12(b)(2). To date, no discovery has taken place. *Cf. Cabinetree of Wis. v. Kraftmaid Cabinetry*, 50 F.3d 388, 391 (7th Cir. 1995) (waiver occurred when defendant seeking arbitration propounded discovery and waited until five months before trial before invoking the arbitration clause).

No doubt, NC12 has been aware of the agreement's mandatory arbitration provision since the commencement of this lawsuit (the agreement was an exhibit to the complaint), or even earlier – Levin alleges NC12 refused to cooperate with his initial arbitration demand. R. 1 ¶¶ 25-27. Nonetheless, NC12's alleged earlier stance should not be irrevocable in light of the relative infancy of the case and federal policy favoring the enforcement of private arbitration agreements. *See St. Mary's Med. Ctr.*, 969 F.2d at 587. Levin will not be prejudiced by a forum change at this stage of the case. The Court has considered the totality of the circumstances and concludes that NC12's actions do not amount to waiver.

**B.**

The Court also finds unpersuasive Levin's second argument, namely, that NC12 must admit that it is bound by the consulting agreement before it can invoke arbitration. A non-signatory to an agreement to arbitrate can request arbitration when a signatory's claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration. *See Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981). In *Hughes*, the Seventh Circuit held that a signatory was equitably estopped from denying arbitration where the signatory sought to recover against the non-signatory amounts allegedly owed to

9

the signatory by the other party to the arbitration agreement. *Id.* at 838-41. This estoppel doctrine recognizes that it would be unfair to allow a plaintiff to "rely on a contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." *Id.* at 839 (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966)). Thus, courts in this district have held that a non-signatory may compel arbitration when the signatory's claims arise out of and relate directly to a written agreement containing an arbitration clause. *See Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004-05 (N.D. Ill. 2001) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

In this case, Levin alleges that NC12, as the successor to TSI, assumed Levin's consulting contract and is liable for breaching the agreement. As discussed above, this consulting contract, upon which Levin premises all of his claims, contains a mediation and arbitration clause. Levin's claims are grounded in NC12's alleged breach of its obligations under the agreement. And because Levin seeks direct benefits under the contract, he cannot disavow the contract's arbitration provision. Thus, the Court concludes that equitable estoppel fairly requires Levin to arbitrate his claims against NC12.

Levin provides no authority for his assertion that NC12 must concede that it is bound by the consulting contract before invoking the contract's arbitration clause. The parties do not dispute that Levin signed the consulting agreement. The agreement states that any dispute arising out of Levin's relationship with TSI shall be settled by arbitration, provided that an attempt at non-binding mediation is not successful. R. 4

at 4. As a signatory, Levin is bound by the agreement's mandatory arbitration provision. Levin does not argue that his claims are unrelated to his relationship with TSI. The Federal Arbitration Act declares that as a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a presumption in favor of arbitrability: "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

In arguing that it "is entitled to enforce the mandatory arbitration provision," NC12 has, in effect, moved this Court to compel arbitration. *See* R. 31 ¶¶ 11-12. However, the Court will not convert NC12's motion to dismiss into a motion to compel arbitration. The Seventh Circuit has held that a district court cannot compel arbitration in a district other than that in which the court sits. *See Merrill Lynch, Pierce, Fenner, & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (dismissing arbitable suit under 12(b)(3) when the contract in question contained forum selection clause that required arbitration outside of the district in which the suit was filed). Here, the consulting agreement provides that the arbitration must be conducted in Houston, Texas. "When an arbitration clause in a contract includes a forum selection clause, 'only the district court in that forum can issue a[n] order compelling arbitration [under §4 of the Federal Arbitration Act].'" *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) (quotation omitted). As such, the Court cannot compel arbitration in Texas and

will instead dismiss Levin's complaint pursuant to Rule 12(b)(3). *See Cont'l Cas. Co. v. Am. Nat'l Ins.*, 417 F.3d 727, 733 (7th Cir. 2005) (noting that dismissal is "appropriate" when a forum selection clause "require[s] arbitration in other districts").[3]

**IV.**

For the reasons discussed above, the Court grants Defendant's motion to dismiss [R. 27].

ENTERED:

*[signature: Edmond E. Chang]*

Honorable Edmond E. Chang
United States District Judge

DATE: June 29, 2011

---

[3]Ultimately, the practical result of this ruling, which is premised on NC12's argument that the arbitration provision controls, is that Levin will get what he sought before the lawsuit's filing, namely, NC12's participation in arbitration in Texas.